UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IKE ADAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1903-NJB-SS** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Ike Adams ("Adams"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423.

## PROCEDURAL HISTORY

On February 23, 2010, Adams filed an application for Supplemental Security Income ("SSI") benefits. R. 100. On May 24, 2010, it was determined that he met the listing requirements for inflammatory arthritis with an established onset date of February 23, 2010. R. 39-42.

On March 17, 2010, Adams filed an application for a period of disability and disability insurance benefits. R. 89–95. He alleged that the disability began on August 29, 2005. R. 89. On May 24, 2010, the claim was denied. R. 59-62. On March 2, 2011, there was a hearing before an Administrative Law Judge ("ALJ"). R. 19-36. Adams was represented by counsel at the hearing. Because he was awarded SSI benefits on May 24, 2010, the only issue before the ALJ was whether or not Adams was disabled prior to the date last insured. Rec. doc. 13 (Memorandum at 4). On

March 17, 2011, the ALJ issued an unfavorable decision. R. 7-18. The Appeals Council denied his request for review. R. 1-6.

On July 20, 2012, Adams filed a complaint against the Commissioner. Rec. doc. 1. The parties filed cross-motions for summary judgment. Rec. docs. 12 and 13. Adams is represented by counsel.

## **STATEMENT OF ISSUE ON APPEAL**

Issue: Whether the onset of Adams' disability occurred on before his date last insured, December 31, 2008.

## **THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL**

The ALJ made the following findings relevant to the issues on appeal:

1. Adams last met the insured status requirements of the Act on December 31, 2008.

2. Adams did not engage in substantial gainful activity during the period from his alleged onset date of August 29, 2005 through the date last insured (20 C.F.R. 404.1571 *et seq.*).

3. Through the date last insured, Adams had rheumatoid arthritis that was a severe condition within the constraints of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p (20 CFR 404.1520(c)).

4. Through the date last insured, Adams did not have a condition or combination of conditions that met or medically equaled one of the listed conditions in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Specifically, Listing 14.09 (A)(2) Inflammatory Arthritis was not met, though in a subsequent application the condition was found to meet the Listing criteria but without evidence to support relating such a condition to the expiration of the date last insured.

5. Through the date last insured, Adams had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

6. Through the date last insured, Adams was capable of performing past relevant work as a railroad laborer and garbage collector. This work did not require the performance of work-

    related activities precluded by Adams' residual functional capacity (20 CFR 404.1565).

7.      Adams was not under a disability, as defined in the Act, at any time from August 29, 2005, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(f)).

R. . 12-16.

## ANALYSIS

a.     **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864

F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.  **Testimony at the Hearing.**

Adams' attorney acknowledged that there were no medical records prior to the date last insured. R. 22.

Adams completed the seventh grade. R. 27. He was not good at reading and writing. R. 27. He did not have a driver's license. R. 27. Adams and his wife of nearly 30 years lived on the disability benefits she received. R. 26 and 32. They lived in a trailer with his nephew. R. 27. Sometimes he washed the dishes. R. 26. His wife did the laundry and the cooking. R. 27. He was able to cut grass. R. 27. He was able to bathe, dress and groom himself. R. 28.

Adams was born with the condition that affected both of his hands. R. 26. When his wife met him, his hands were balled up. R. 32. They are the same today as when they met. R. 32-33. He complained to her about his hands hurting him. R. 33.

Adams worked for a railroad for about five years. R. 29.[2] He lifted rails weighing 80 pounds with tongs with a man on each side. R. 28-29. Each man was lifting about 40 pounds. R. 29. He picked up trash for a disposal company. R. 29.

Adams was not sure when he quit working for the railroad. R. 25. He stopped working because his hands were hurting. R. 33. After he quit the railroad, he did not look for other jobs. R. 26. He was able to do the job at the railroad until his hands starting hurting. R. 29. Because of his hands, Adams could not work after August 29, 2005. R. 24.

After he quit working, he did not have any trouble picking up small things like a pen. R. 31. He did not try to pick up big things. R. 31. He had been to the hospital a couple of times for his hands. R. 33.

The vocational expert described Adams' work with the railroad as medium - unskilled. R. 34. The railroad work required bilateral dexterity. R. 34-35.

c.   **Medical Evidence**.

On November 19, 2006, Adams had pneumonia and a urinary tract infection (as indicated by the medical history record available at the time of his July 27, 2009 admission). R. 174.

On July 27, 2009, Adams was admitted to Leonard J. Chabert Medical Center ("Chabert")

---

[2] Adams worked for Plant Track Speciality, Inc. of Des Allemands from 1995 through 2004. R. 14 and 100-113.

6

for pancreatitis and alcohol abuse.  He was discharged on August 6, 2009.  The diagnoses on discharge were acute pancreatitis, alcohol abuse, tobacco abuse and hypertension.  R. 174.  The history indicated that he worked for the railroad until about five years before.  He quit because of bilateral hand stiffness.  R. 175.  His condition at discharge was good.  There were no restrictions on his activities.  R. 178.

On September 3, 2009, he returned to Chabert.  R. 179.  It was noted that he had bilateral hand deformity with the right hand worse than the left hand.  He was unable to extend his fingers.  He was born with the condition.  R. 180.  He was to return in four months.  R. 181.

On May 8, 2010, he was seen by Stacy Heimburger, M.D.  R. 183.  He was diagnosed with crippling arthritis and leg pain with walking.  R. 186.  He was diagnosed since birth with arthritis of the both hands.  He had a noted swan-neck deformity of both hands and decreased hand function. R. 186.

d. **Plaintiff's Appeal.**

**Issue**.   Whether the onset of Adams' disability occurred on before his date last insured, December 31, 2008.

Adams contends, that pursuant to SSR 83-20 - Onset of Disability (1983) (Rec. doc. 12 (Exhibit) and Spellman v. Shalala, 1 F.3d 357, 362 (5th Cir. 1993), the ALJ could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor.  Adams urges that the case be remanded for a redetermination of the onset date in consultation with a medical advisor.

SSR 83-20 states the policy and describes the relevant evidence to be considered when establishing the onset date of disability.  Rec. doc. 12 (Exhibit at 1).  Factors relevant to the

determination of disability onset include the individual's allegation, the work history, and the medical evidence. Id. at 1.

Where the origin of the disability is not traumatic, the determination involves consideration of the applicant's allegations, work history, medical evidence and other evidence concerning impairment severity. "The weight to be given any of the relevant evidence depends on the individual case." Id. at 2. "The medical evidence serves as the primary element in the onset determination." Id. at 2.

> With slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such case, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

Id. at 2. "[T]he established onset date must be fixed based on facts and can never be inconsistent with the medical evidence of record." Id. at 2.

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge [ALJ] should call on the services of a medical advisor when onset must be inferred. If there is information indicating that additional medical evidence is available, such evidence should be secured before inferences are made.

Id. at 3.

The Commissioner argues that substantial evidence supports the ALJ's finding that Adams was not disabled by December 31, 2008. The Commissioner contends that Spellman is distinguishable.

In Spellman, the Fifth Circuit remanded the case and instructed the Commissioner to consult a medical advisor in redetermining the onset date of the claimant's disability. 1 F.3d at 363-64. The claimant filed for benefits on October 24, 1983 and alleged disability from September 8, 1982, the date she stopped working. She alleged physical and mental impairments. The Appeals Council found that: (1) she had severe physical impairments as of September 8, 1982; (2) she did not have a severe mental impairment until October 1, 1985; (3) prior to October 1, 1985 she could perform sedentary work, including her past relevant work; (4) beginning October 1, 1985 she was disabled because her job exceeded her residual functional capacity as a result of her severe mental impairment. Id. at 360.

The Fifth Circuit found that "the onset date of Spellman's disability is ambiguous, because it is unclear when Spellman's mental impairment first restricted her functional capacity." Id. at 363. It cited that: (1) she was diagnosed as depressed and medication was prescribed for anxiety and depression before October 1, 1985; (2) the Appeals Council failed to explain why October 1, 1985 was significant; (3) nothing in the record suggested that October 1, 1985 was significant with regard to her disability; (4) she quit working on September 8, 1982, three years before October 1, 1985; (5) she suffered from chronic fatigue during the relevant period which may have indicated a mental impairment; and (6) her mental impairment was of a slowly progressive nature. Id. at 363.

The Fifth Circuit held that:

> "[L]ack of evidence alone is not sufficient to support a finding that an impairment did not exist at a disabling level of severity. . . . We conclude that the Appeals Council's determination of the onset date was not based on a legitimate medical basis, and, therefore, was not an informed judgment of the facts. We also conclude that because Spellman's mental impairment was of a slowly progressive nature, and the medical evidence was ambiguous with regard to the disability onset date, the Appeals Council could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor.

Id. at 363 (citations and quotation marks omitted).

The medical evidence and Adams' testimony are clear that his hands did not restrict his ability to perform work activity prior to December 31, 2008. Unlike Spellman, where anti-depressant medication was prescribed as early as September 1982, there is no evidence that medication was prescribed for Adams' arthritis prior to December 31, 2008. The first medical record for Adams is September 27, 2009. He complained of a sharp pain in his stomach, but did not seek treatment for his arthritis. R. 174. He was discharged without restrictions. R. 178.

Adams' medical evidence is not ambiguous. Spellman does not require a remand with instructions that the Commissioner consult a medical advisor in redetermining the onset date of Adams' disability. There is substantial evidence for the ALJ's decision that Adams was not disabled as of December 31, 2008, the date last insured.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the cross-motion of the Commissioner for summary judgment (Rec. doc. 13) be GRANTED and the motion of Adams for summary judgment (Rec. doc. 12) is DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 29th day of May, 2013.

                                          **SALLY SHUSHAN**
                                        **United States Magistrate Judge**