**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IKE ADAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1903** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "G" (1)** |

**ORDER AND REASONS**

Before the Court are Plaintiff Ike Adams' ("Adams") Objections to the Magistrate Judge's Report and Recommendations,[1] by which Adams requests the Court to remand his claim for disability insurance benefits to the Administrative Law Judge ("ALJ") for a new hearing. Having considered Adams' Objections, the cross motions for summary judgment filed by both Adams and Defendant Social Security Administration (the "Commissioner"), the magistrate judge's Report and Recommendation, the record, and the applicable law, for the following reasons the Court will grant the Commissioner's motion for summary judgment and deny Adams' motion for summary judgment.

**I. Background**

*A. Procedural Background*

On February 23, 2010, Adams applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits, under Title XVI and Title II, respectively, of the Social Security Act (the "Act").[2] The Commissioner determined on May 24, 2010, that Adams met the regulatory requirements for a disability due to his inflammatory arthritis as of February 23, 2010, and would thus be granted SSI benefits. Though he was approved for SSI benefits, the Commissioner denied Adams' claim for *disability* benefits because the determined disability onset date fell after Adams'

---

[1] Rec. Doc. 15.

[2] Rec. Doc. 9 at pp. 39-42.

last-insured date of December 31, 2008.[3]

Adams filed a subsequent claim for disability insurance benefits on March 17, 2010, alleging that his disability began on August 29, 2005, the date he stopped working as a railroad laborer.[4] Adams claims that he stopped working because his hands, alleged to be disfigured by arthritis, hurt too much to continue working.[5] The Commissioner denied this claim on May 24, 2010. Adams then sought and received a hearing before an ALJ on March 2, 2011. The ALJ denied Adams' claim for disability benefits on March 17, 2011.[6] Adams appealed the ALJ's decision, but on June 1, 2012, the Appeals Council denied his request for review.[7]

As Adams had exhausted his administrative remedies,[8] he filed a complaint against the Commissioner in this Court on July 20, 2012. Magistrate Judge Shushan ordered Adams to file his summary judgment motion by January 7, 2013.[9] Adams filed a motion on that date, but it was marked deficient because it lacked the required notice of submission.[10] The Magistrate Judge granted Adams one week to remedy the error, which he did the following day.[11] Meanwhile, the

---

[3] *Id.* at p. 46.

[4] *Id.* at pp. 89-95.

[5] *Id.* at pp. 24, 180.

[6] *Id.* at p. 16.

[7] *Id.* at p. 1.

[8] *See McQueen v. Apfel*, 168 F.3d 152, 155 (5th Cir. 1999) (citation omitted). A court cannot review the Commissioner's final decision unless the claimant has exhausted his administrative remedies; exhaustion requires raising a claim of error to the Appeals Council. *Id.*

[9] Rec. Doc. 10.

[10] Rec. Doc. 11.

[11] Rec. Doc. 12.

2

Commissioner's deadline to file his motion for summary judgment was February 11, 2013.[12] The Commissioner filed its motion 10 days late on February 21, 2013.[13] Magistrate Judge Shushan issued her recommendation on May 29, 2013, recommending that Adams' motion for summary judgment be denied and that the Commissioner's motion for summary judgment be granted. Adams timely filed his objections to the recommendation.[14]

## B. Factual Background

At the hearing on March 2, 2011, before the ALJ, there was no evidence of any medical records before Adams' last-insured date of December 31, 2008. Accordingly, the ALJ considered records from Chabert Medical Center in Houma, Louisiana, which Adams had twice visited for conditions unrelated to his hands.[15] One record noted that on July 27, 2009, the fingers in both of Adams' hands had a decreased range of motion and that the "PIP joints [were] swollen in the right hand."[16] Another record from September 3, 2009, reported that Adams exhibited "[b]ilateral hand deformity" and that his fingers flexed but were unable to extend.[17] Meanwhile, there was no evidence that Adams had taken medications for arthritis before his last-insured date.[18] However, Adams had not complained about his condition to medical personnel during his visits to Chabert in

---

[12] Rec. Doc. 10.

[13] Rec. Doc. 13.

[14] Rec. Doc. 15.

[15] *See* Rec. Doc. 9 at p. 174 (reflecting diagnoses of acute pancreatitis, alcohol and tobacco abuse, and hypertension); *id.* at 179 (similar).

[16] *Id.* at p. 176.

[17] *Id.* at p. 180.

[18] *Id.* at p. 12.

2009, nor was there any evidence that Adams had complained to any doctor before then.[19] The ALJ considered other evidence in support of his determination that Adams was not disabled prior to December 31, 2008. At the hearing, Adams testified that he continues to mow his own lawn and help his wife carry out household chores.[20] Adams also testified that he could lift 40 pounds before his last-insured date. Consequently, the ALJ's ultimate determinations were:

(1)     Adams met the Act's insured-status requirements on December 31, 2008;

(2)     Adams did not engage in "substantial gainful activity" between August 29, 2005, through his last-insured date;

(3)     Adams had rheumatoid arthritis that was a "severe condition" during that period;

(4)     Adams did not meet the listing for inflammatory arthritis during that period;

(5)     Until at least December 31, 2008, Adams had sufficient residual functional capacity to perform the full range of medium work;

(6)     Adams was capable of performing past relevant work as a railroad laborer and garbage collector through December 31, 2008; and

(7)     As a result, Adams was not disabled under the Act any time between August 29, 2005, and December 31, 2008.[21]

### C. Adams' Objections to the Magistrate Judge's Report and Recommendations for this Court's Review

Adams raises two objections to the magistrate's recommendation. First, Adams argues that Social Security Ruling ("SSR") 83-20 requires that the ALJ consult a medical advisor before determining Adams' onset date.[22] Adams argues that the Fifth Circuit's decision in *Spellman v. Shalala* requires such consultations in cases that involve "slowly progressive impairments, when the

---

[19] *Id.* at p. 14.

[20] *Id.* at p. 13.

[21] *Id.* at pp. 12-16.

[22] *Id.* at p. 4.

medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date[.]"[23] Adams argues that the ALJ's failure to abide by that requirement compels remand to the Commissioner for a re-evaluation of his claim and that the magistrate judge's misapplication of *Spellman* warrants this Court's rejection of her recommendation.

Second, Adams notes that the Commissioner's motion for summary judgment was untimely and filed without either leave of the court or with Adams' consent.[24] He argues that the Court therefore should dismiss the Commissioner's motion as untimely.

## II. Standards of Review

### A. Review of Magistrate Judge's Report and Recommendation

When designated by the district court to do so, a United States Magistrate Judge may consider motions for summary judgment and recommend their disposition in accordance with the magistrate judge's findings of fact and determinations of law.[25] However, when a party objects to a magistrate judge's recommendation, the district court must review the matter de novo.[26]

Review of an ALJ's decision to deny disability benefits is limited to determining whether the ALJ's decision is supported by "substantial evidence on the record as a whole" and is based on the proper legal standard.[27] The ALJ's decision is supported by "substantial evidence" when it rests upon "such relevant evidence as a reasonable mind might accept as adequate" to support the conclusion.[28]

---

[23] Rec. Doc. 15 at pp. 3-6 (citing *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993)).

[24] *Id.* at p. 6.

[25] *See* 28 U.S.C. § 636(b).

[26] *See* Fed. R. Civ. P. 72(b)(3).

[27] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citation omitted).

[28] *Id.*

Thus, a court must uphold the decision when it is supported by a weight of evidence described as "more than a mere scintilla and less than a preponderance."[29] While a court must examine the record to determine whether such evidence is present, it cannot re-weigh the evidence.[30] Moreover, a court cannot substitute its judgment for that of the ALJ.[31] If the ALJ's findings of fact are supported by substantial evidence, they are conclusive.[32]

A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[33]

## B. Standard on a Motion for Summary Judgment Reviewing the Commissioner's Final Decision on Benefits

The Court notes that both Adams and the Government have moved for summary judgment. The standard of review applicable to such motions requires that a moving party establish that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.[34] Under 42 U.S.C. § 405(g), however, this Court may examine only the pleadings and the record relied upon by the ALJ. Thus, there cannot generally be a disputed issue of fact before the Court in

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[34] Fed. R. Civ. P. 56(c).

Social Security appeals.[35] Instead, "[t]he issue is whether the action of the Secretary is supported by the Record."[36]

Even so, the Fifth Circuit has nonetheless regularly allowed district courts to rule on Social Security disputes through the summary judgment procedure, at least when "the district court has adequately reviewed the record and based its judgment on a finding of substantial evidence in the administrative record."[37] As Adams and the government themselves acknowledge,[38] "the only remaining question is whether there was substantial evidence on the record to justify the district court's judgment."[39]

### III. Law – Eligibility for Disability Benefits

*A. An ALJ's Evaluation of a Disability Claim*

An ALJ's evaluation of a disability claim involves a five-step process.[40] The claimant has the burden of proof on the first four steps. First, he must establish that he is not presently working at any substantial gainful activity.[41] Second, he must have an impairment or combination of impairments that are severe; a "severe" impairment is one that "significantly limits" a claimant's physical or

---

[35] *See Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).

[36] *Id.* (citing *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977)).

[37] *Id.*; *see also, e.g.*, *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (setting forth both the summary judgment and substantial evidence standards of review).

[38] *See* Rec. Doc. 12 at p. 5 ("The ALJ's determination of the onset date was not based on a legitimate medical basis and therefore was not an informed judgment of the facts."); Rec. Doc. 13 at p. 5 ("Substantial evidence supports the ALJ's decision . . . .").

[39] *Lovett*, 667 F.2d at 3.

[40] *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001).

[41] *Id.*

mental ability to do basic work activities.[42] Third, the impairment must meet or equal an impairment listed in the appendix to the regulations.[43] Fourth, the impairment must prevent the claimant from returning to his past relevant work.[44]

Once a claimant has met his burden on the first four steps, the burden shifts to the Commissioner for the fifth and final step. At this stage, the Commissioner must establish that there is other gainful employment that the claimant is capable of performing, even with his existing impairments.[45] If the Commissioner establishes that such work exists, the claimant must prove that he cannot in fact perform the work; failure to do so requires the ALJ to find the claimant is not disabled.[46]

**B. Social Security Ruling 83-20**

SSR 83-20 sets forth the relevant evidence that ALJs are to consider when trying to determine the onset date of a claimant's disability.[47] When a claimant alleges a disability of non-traumatic origin, SSR 83-20 requires ALJs to consider "the applicant's allegations, work history, if any, and the medical *and other evidence* concerning impairment severity."[48] The individual weight that the ALJ and the Appeals Council should give to those factors "depends on the individual

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *See* SSR 83-20. As a Social Security Ruling, SSR 83-20 is "binding on all components of the Social Security Administration[.]" 20 C.F.R. § 402.35(b)(2) (2007).

[48] *Id.* (emphasis added).

case."[49]

SSR 83-20 further provides that medical evidence is "the primary element in the onset determination." Moreover, it outlines procedures for cases involving "slowly progressive impairments[.]"[50] In particular, SSR 83-20 notes that pinpointing an onset date in such cases may be difficult when the alleged date is "far in the past and adequate medical records are not available."[51] The determination in such cases requires the ALJ or Appeals Council to reasonably infer the onset date "from the medical and other evidence that describe the history and symptomatology of the disease process."[52] The ALJ or the Appeals Council can make this inference only if it is supported by "a legitimate medical basis."[53] Moreover, this medical basis cannot be acquired without outside help: "At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred."[54]

### IV. Analysis

### A. Determination of Adams' Onset Date

Here, the ALJ determined that Adams satisfied the first two steps of the disability inquiry, because Adams was not engaged in "substantial gainful activity" at the time he claimed benefits and because he suffered a "severe" impairment.[55] The ALJ went on to determine that while Adams'

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] Rec. Doc. 9 at p. 12.

condition met, or medically equaled, one of the listed conditions in the relevant regulations *after* Adams' last-insured date of December 31, 2008,[56] his condition did not meet the listing requirement between August 29, 2005, and December 31, 2008. The ALJ based this finding on both a lack of medical evidence that Adams had "persistent inflammation or deformity" that resulted in Adams' inability to perform fine and gross movements effectively," and Adams' testimony that he continued to engage in household chores.[57] The ALJ also determined that Adams was able to return to his past relevant work during that same period.[58] Therefore, the ALJ determined that Adams was not disabled for the period of August 29, 2005, through December 31, 2008.[59] Adams asserts that the ALJ's decision regarding his onset date was not supported by substantial evidence because the ALJ was required to seek the advice of a medical consultant and failed to do so.

Under *Spellman v. Shalala*, the Commissioner must consult an outside medical advisor to determine the onset of disability in cases involving "slowly progressive impairments" and where there is ambiguous medical evidence.[60] In *Spellman*, the Fifth Circuit held that medical evidence is ambiguous when the available evidence does not make it clear when a claimant's impairment "first restricted [his] functional capacity."[61]

This Court acknowledges that Adams' claim shares some similarities with *Spellman*. For

---

[56] Specifically, Adms' condition was determined to meet or medically equal Listing 14.09(A)(2) Inflammatory Arthritis. *Id.* As noted above, this finding was made as of February 23, 2010, in connection with Adams' prior application for SSI benefits.

[57] *See id.* at pp. 12-13.

[58] *Id.* at pp. 13-16.

[59] *Id.* at p. 16.

[60] 1 F.3d at 362.

[61] *Id.* at 363.

example, Adams' disability claim, like that of Spellman, was neither supported nor undermined by medical records from the relevant period of alleged disability.[62] Likewise, it is probable that inflammatory arthritis is a "slowly progressive impairment" akin to those that Adams' favored portion of SSR 83-20 discusses and to that Spellman suffered.[63] Finally, like the claimant in *Spellman*, the Commissioner has determined that Adams met the listing requirements for the disability, but that he did so after his alleged onset date.[64] However, these similarities are not legally relevant and therefore do not compel the same outcome as in *Spellman*.

This Court finds that *Spellman* is distinguishable from Adams' claims. The relevant distinction between this case and *Spellman* is that the ALJ's decision here could be based, and was, on other available evidence that was not presented in *Spellman*. In particular, Adams testified that he sometimes mows his grass, does the laundry, and washes dishes.[65] Adams also testified that he is able to dress, bathe and groom himself.[66] He said that after he quit working, he did not have trouble picking up and holding small items.[67] Moreover, he told a doctor on May 8, 2010, that his maximum lifting capacity was 50 pounds and that he could stand for more than an hour.[68] All of these facts provide evidence that Adams was not disabled due to his arthritis between August 29, 2005, and December 31, 2008. In other words, the ALJ had substantial evidence to support a finding

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 9 at pp. 26-27.

[66] *Id.* at p. 28.

[67] *Id.* at p. 31.

[68] *Id.* at pp. 13, 184.

that Adams was not disabled before December 31, 2008, because there was sufficient evidence to establish that his physical impairment had not "restricted [his] functional capacity[]" by that date.[69]

Also, the Court has considered the lack of medical evidence regarding the severity of Adams' disability before his alleged onset date and has considered that lack of evidence in its review. While such a lack of evidence is not by itself sufficient to support a finding that Adams was not disabled prior to his last-insured date, it must be considered in conjunction with Adams' abilities and conduct since his alleged onset date of August 29, 2005. Unlike the claimant in *Spellman*, whose claim was supported by evidence that she complained of her depression to doctors, albeit after her alleged onset date,[70] Adams has provided no evidence that he discussed his arthritis and pain to a treating physician–at any point. Moreover, there is no evidence that Adams had been prescribed medication to alleviate his condition.

Taken as a whole, therefore, Adams' case is not mired in the ambiguity that concerned the Fifth Circuit in *Spellman*, which required the ALJ to consult a medical consultant. Instead, the ALJ had substantial evidence before him from which to determine that between August 29, 2005, and December 31, 2008, Adams "had the residual functional capacity to perform the full range of medium work" and that he "was capable of performing past relevant work as a railroad laborer and garbage collector."[71] Because this Court must defer to the ALJ's findings when they are supported by substantial evidence, the Court must accept the ALJ's finding that Adams was not disabled prior

---

[69] *Spellman*, 1 F.3d at 363.

[70] *Id.* at 358-59.

[71] Rec. Doc. 9 at pp. 13-16.

to December 31, 2008, and grant the Commissioner's motion for summary judgment.[72]

### B. Timeliness of the Commissioner's Motion for Summary Judgment

Adams' second objection to the magistrate judge's Report and Recommendation is that the Commissioner's motion should be dismissed as untimely. While the Commissioner's unexcused, and unexplained, failure to abide by the Court's deadline is troubling, this Court has wide discretion in how it manages its docket, with such decisions reviewed only for abuse of discretion.[73] Considering that Adams also failed to meet his deadline,[74] the Court finds it appropriate to exercise such discretion here to reject Adams' argument and thus accept the Commissioner's untimely filing.

### V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the magistrate judge's recommendation;

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment[75] is **GRANTED** and that Adams' claims are **DISMISSED WITH PREJUDICE**;

---

[72] *Perez*, 415 F.3d at 461(citation omitted).

[73] *See Topalian v. Ehrman*, 954 F.2d 1125, 1139 (5th Cir. 1992); *see also*, *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, No. 06-9170, 2013 WL 392582, at *9 (E.D. La. Jan. 31, 2013) ("*SnoWizard*") (exercising discretion to consider untimely motion for summary judgment).

[74] Rec. Doc. 11, 12.

[75] Rec. Doc. 13.

**IT IS FURTHER ORDERED** the Adams' motion for summary judgment[76] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, on this  21st  day of August, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[76] Rec. Doc. 12.

14